1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CLASSICAL SILK, INC., a California Corporation,

        Plaintiff,

    vs.

DOLAN GROUP, INC., a California Corporation; URBAN OUTFITTERS, INC., a Pennsylvania Corporation d/b/a "Anthropologie"; THE TJX COMPANIES, INC., a Delaware Corporation d/b/a "Marshalls"; and DOES 1 through 10,

        Defendants.

Case No. CV 14-09224-AB (MRWx)

**ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE**

1    Before the Court are the parties' Motions in Limine ("MILs").  Plaintiff

2  Classical Silk, Inc. ("Classical Silk") has filed four MILs, each of which Defendants

3  Dolan Group, Inc. ("Dolan"), Urban Outfitters, Inc. dba Anthropologie

4  ("Anthropologie"), and The TJX Companies, Inc. dba Marshalls ("TJX")

5  (collectively, "Defendants") have timely opposed.  Dkt. Nos. 91-94, 113-16.

6  Defendants have filed eight MILS, each of which Plaintiff has also timely opposed.

7  Dkt. Nos. 95-102, 118-25.  As set forth below, the Court **DENIES IN PART** and

8  **GRANTS IN PART** Plaintiffs' MIL No. 1 (Dkt. No. 91) and **DENIES** Plaintiff's

9  MIL Nos. 2 and 4 (Dkt. Nos. 92, 94).  The Court also **DENIES** Plaintiff's Requests

10  for Judicial Notice and Advisement of Jury (Dkt. Nos. 132 and 145).  The Court

11  **GRANTS** Defendants' MIL Nos. 1 and 2 (Dkt. No. 95-96).  The Court **DENIES**

12  Defendants' MIL Nos. 3, 4, 6, 7, and 8 (Dkt. Nos. 97-98, 100-02).

13    Also before the Court is the parties' proposed Joint Final Pre-Trial Conference

14  Order ("FPTCO"), which raises two additional issues for the Court's resolution.

15  Dkt. No. 131.  First, Defendants assert a number of affirmative defenses in the

16  proposed FPTCO that the Court deems redundant.  Accordingly, as discussed below,

17  the Court **STRIKES** Defendants' first, second, fifth, eleventh, twelfth, sixteenth,

18  eighteenth, and nineteenth affirmative defenses to streamline the issues at trial.

19  Second, the parties have raised cross-requests to bifurcate trial, which they have

20  each briefed in connection with Defendants' MIL No. 5.  As discussed below, the

21  Court **DENIES** the parties' requests to bifurcate in the proposed FPTCO, and by

22  extension, the Court **DENIES** Defendants' MIL No. 5 (Dkt. No. 99).  However, the

23  Court finds that bifurcation of Defendants' equitable affirmative defenses is

24  appropriate.  The Court thus **GRANTS** Plaintiffs' MIL No. 3 (Dkt. No. 93).

25  Because these issues raised in the parties' proposed FPTCO impact the outcome of

26  certain MILs, the Court will first address Defendants' affirmative defenses and the

27  parties' requests for bifurcation and will then turn to the parties' remaining MILs.

28

1

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

# I.     **AFFIRMATIVE DEFENSES**

As set forth in the parties' proposed FPTCO (Dkt. No. 131) and in

Defendants' Memorandum of Contentions of Law and Fact (Dkt. No. 103),

Defendants intend to pursue a number of "affirmative defenses" at trial.  The Court

concludes, however, that Defendants' first, second, fifth, eleventh, twelfth, sixteenth,

eighteenth, and nineteenth affirmative defenses do not function as affirmative

defenses, but instead function to negate elements of the claims that Plaintiff has the

burden to prove.  "A defense which demonstrates that plaintiff has not met its

burden of proof is not an affirmative defense."  *Zivkovic v. S. California Edison Co.,*

302 F.3d 1080, 1088 (9th Cir. 2002).  Rather, "[a]n affirmative defense, under the

meaning of Federal Rule of Civil Procedure 8(c), is a defense that does not negate

the elements of the plaintiff's claim, but instead precludes liability even if all of the

elements of the plaintiff's claim are proven."  *Barnes v. AT & T Pension Ben. Plan-*

*Nonbargained Program*, 718 F. Supp. 2d 1167, 1173-74 (N.D. Cal. 2010) (citing

*Roberge v. Hannah Marine Corp.,* 124 F.3d 199, 1997 WL 468330, at *3 (6th Cir.

1997) (unpublished table decision)).  In other words, an affirmative defense is "a

defense on which the defendant has the burden of proof."  *Id.* at 1174 (citing *Kanne*

*v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 n. 4 (9th Cir. 1988)).

Here, Defendants' first, second, fifth, and sixteenth purported affirmative

defenses allege "lack of copying," "lack of substantial similarity," "lack of damages"

and "copyrighted work not original to Plaintiff."  Defs' Mem. of Contentions of

Facts and Law at 7-10, Dkt. No. 103.  As discussed in the Court's MSJ Order,

however, Plaintiff bears the burden to prove copyright protection, copying,

substantial similarity, and damages.  MSJ Order at 15-23.  Defendants' first, second,

fifth, and sixteenth defenses thus function only as rebuttals to the evidence that

Plaintiff has the burden to present in support of its claim for copyright infringement.

Similarly, Defendants' eighteenth and nineteenth purported affirmative defenses

allege "lack of notice" and "innocent infringement and good faith," both seeking to

prove that any alleged infringement was not willful.  Here again, however, Plaintiff bears the burden to prove the element of willfulness (*See* Pl.'s Mem. of Contentions of Facts and Law at 5-8, Dkt. No. 88), thus making Defendants' eighteenth and nineteenth defenses mere rebuttals to Plaintiff's evidence.  Finally, Defendants' eleventh and twelfth purported affirmative defenses allege "punitive/enhanced damages improper" and "attorneys' fees improper."  *Id.*  Plaintiff concedes, however, that it is Plaintiff's burden to establish that an award of enhanced damages and/or attorneys' fees is proper.  Pl.'s Mem. of Contentions of Facts and Law at 10-14, Dkt. No. 88.  Defendants' eleventh and twelfth defenses thus act only to negate elements of Plaintiff's prima facie case.

For these reasons, Defendants' first, second, fifth, eleventh, twelfth, sixteenth, eighteenth, and nineteenth purported affirmative defenses are redundant to Defendants' denial of Plaintiff's prima facie case.  The Court thus **STRIKES** these defenses to simplify and streamline the issues at trial.  Fed. R. Civ. Proc. 12(f); *see also, e.g., Barnes*, 718 F. Supp. 2d at 1174 ("To the extent that the AT & T restates negative defenses that exist in other parts of the complaint, those defenses are redundant pursuant to Rule 12(f) and should be struck so as to simplify and streamline the litigation.  Here, AT & T's second, third, fourteenth, seventeenth, eighteenth, nineteenth, twenty-second and twenty-third affirmative defenses simply provide a basis to negate an element of Barnes' prima facie case for relief and are restatements of denials present in earlier parts of the complaint. Accordingly, these affirmative defenses, which, in fact, are merely rebuttal to plaintiff's claims are stricken.").  As asserted at the Final Pretrial Conference, Defendants' remaining defenses are misuse of copyright/unclean hands, laches, waiver, estoppel, and mitigation of damages.  Other than the defense of mitigation of damages, which will be left for the jury's consideration to the extent Defendants pursue it,[1] these

---

[1] The Ninth Circuit has included a model jury instruction for mitigation of damages, thus indicating mitigation of damages is a question for the jury.  *See* Ninth Cir. Model Jury Instruction

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

1  equitable defenses present questions for the court rather than the jury and will thus
2  be addressed below in the Court's discussion of Plaintiff's MIL No. 3.

## II.   BIFURCATION

### A.   Parties' Requests for Bifurcation in the Proposed Final Pretrial Conference Order

As noted above, both sides have requested bifurcation of the issues for trial in their proposed FPTCO, each side briefing its argument in connection with Defendants' MIL No. 5.  Defendants request the Court bifurcate trial into a first phase addressing whether Plaintiff released its current claims against Anthropologie in a Release executed in a different action in November 2014 ("Release") and a second phase addressing liability and damages combined.  Defs' MIL No. 5, Dkt. No. 99; *see also* Proposed FPTCO at 20-21.  Plaintiff opposes Defendants' request and instead requests the Court bifurcate trial into a first phase addressing Defendants' liability and a second phase addressing damages.  Pl.'s Opp. to Defs' MIL No. 5, Dkt. No. 122; *see also* Proposed FPTCO at 20-21.

Under Rule 42(b) of the Federal Rules of Civil Procedure, the Court may order separate trials for one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ."  To determine whether to order bifurcation, courts generally look to whether bifurcation will promote "'efficient judicial administration,' considering such factors as convenience, prejudice to the parties, simplification of discovery and conservation of resources, risk of jury confusion, and separability of the issues."  *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471, 2013 WL 3233341, at *1 (C.D. Cal. June 25, 2013) (citing *Pinal Creek Grp. v. Newmont Mining Corp.*, 218 F.R.D. 652, 654 (D. Ariz. 2003)

---

No. 5.3; *see also, e.g., Meat Mkt., Inc. v. Am. Ins. Co.,* No. 1:11-CV-00983, 2013 WL 1151995, at *8 (E.D. Cal. Mar. 19, 2013) ("[W]hether a party acted reasonably to mitigate damages is generally a question of fact for the jury."); *Li v. Sheltzer*, No. 1:07-CV-1039, 2008 WL 5216033, at *9 (E.D. Cal. Dec. 12, 2008) ("Both Federal and California law recognize a duty to mitigate damages, and whether a plaintiff has failed to mitigate damages is generally a question of fact for the jury.").

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

and *Mformation Techs., Inc. v. Research in Motion Ltd*., No. C 08–04990, 2012 WL 1142537, at *1 (N.D. Cal. March 29, 2012)).  And "[b]ecause bifurcation rests in principles of judicial economy, additional considerations include (1) whether evidence offered in the proposed phases will overlap, and (2) whether bifurcation will permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols*., No. CV 06-00566, 2009 WL 910701, at *2 (C.D. Cal. Mar. 31, 2009) (quotations omitted) (citing *Hangarter v. Provident Life & Acc. Ins. Co*., 373 F.3d 998, 1021 (9th Cir. 2004); *Jinro America, Inc. v. Secure Investments, Inc*., 266 F.3d 993, 998 (9th Cir. 2001)).

"Bifurcation is particularly appropriate when resolution of a claim or issue might dispose of the entire case." *Renfrow v. Redwood Fire & Cas. Ins. Co*., 288 F.R.D. 514, 523 (D. Nev. 2013).  But the Court has "discretion to subdivide the case in whatever manner seems dictated by the circumstances" (*Rivera v. Nibco, Inc*., No. CIVF–99–6443, 2006 WL 845925, at *5 (E.D. Cal. Mar. 31, 2006) (quotations omitted)), and bifurcation "is the exception rather than the rule of normal trial procedure" within the Ninth Circuit.  *Clark v. I.R.S*., 772 F.Supp.2d 1265, 1269 (D. Haw. 2009) (citing *Hangarter*, 373 F.3d at 1021).

Both sides' proposals for bifurcation offer certain advantages.  Plaintiff's proposal would allow the parties to avoid a second phase concerning damages if the jury concluded in the first phrase that Defendants are not liable.  Likewise, Defendants' proposal would allow the parties to omit evidence and argument in the second phase concerning Plaintiff's claims against Anthropologie if the jury concluded in the first phase that Plaintiff released its claims against Anthropologie.

Practically speaking, however, neither proposal will save significant time or resources.  The majority of the proposed witnesses are offered to testify concerning the alleged infringement and damages associated with both of the designs at issue in this case.  *See* Joint Witness List, Dkt. No. 90.  Thus, under Defendants' proposal,

5

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

even if the jury found in the first phase that Plaintiff released its claims against Anthropologie, a second phase would still be necessary and the jury's finding concerning the Release would omit only one or two witnesses from that second phase. And though a second phase would be unnecessary under Plaintiff's proposal if the jury found no liability, the first phase concerning liability would necessarily require testimony from the same corporate witnesses who have been tapped to testify concerning damages. Moreover, the parties do not intend to call expert witnesses on the issue of damages, significantly simplifying the evidence that would be presented on the damages issue in a single trial.[2]

Bifurcation into two jury trials will necessarily complicate and delay this proceeding, and the Court concludes that neither side's proposal for bifurcation will significantly preserve judicial resources to outweigh bifurcation's disruptive effect. Accordingly, the Court **DECLINES** to bifurcate the trial as the parties propose in their proposed FPTCO.[3] Defendants' MIL No. 5 is **DENIED**.

---

[2] Plaintiff argues in its Opposition to Defendants' MIL No. 5 that bifurcation of liability and damages should be granted also because it will allow Plaintiff to elect its damages theory after the liability phase is concluded. Opp. to Defs' MIL No. 5 at 3-4, Dkt. No. 122. Plaintiff cites no authority to suggest that this is appropriate use of bifurcation, however. 17 U.S.C. § 504(c)(1) provides only that:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

This section does not require bifurcation of liability and damages to facilitate Plaintiff's election of a damages theory. Moreover, under Plaintiff's proposal, Plaintiff will present evidence concerning sales and profits to prove willfulness in the first phase of trial regardless of Plaintiff's election for the second phase, and this same evidence will likely be relevant whether Plaintiff seeks actual damages or a statutory award based on Defendants' degree of culpability. Thus, even allowing for Plaintiff's election of damages, bifurcation would not streamline the issues for the second phase but would instead likely lead to the duplication of evidence.

[3] At the Final Pretrial Conference, counsel for Plaintiff suggested another option for bifurcation, which would require the jury to hear evidence on both liability and damages, deliberate and render a verdict on liability, and then, without any further argument or evidence, deliberate and render a verdict on damages based on Plaintiff's election of actual or statutory

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

### B.    Plaintiff's MIL No. 3 to Exclude Evidence Regarding Defendants' Affirmative Defenses

Though not framed as a request for bifurcation, Plaintiff's MIL No. 3 seeks an order excluding any evidence or argument concerning Defendants' equitable affirmative defenses, arguing that such defenses are outside the purview of the jury and must be presented separately to the Court.[4]  Pl.'s MIL No. 3 at 1, Dkt. No. 93. Plaintiff argues that, under Rule 403 of the Federal Rules of Civil Procedure, the Court should exclude any evidence or argument directed toward Defendants' equitable affirmative defenses to avoid misleading and confusing the jury and inviting them "to make a determination on the basis of 'equitable' considerations that do not properly enter into any determination that the jury must make." *Id.* at 1-2 (citing *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc*., 219 F.R.D. 135, 145 (N.D. Iowa 2003)).

Defendants agree that, if the Court can draw a "clean distinction" between the legal and equitable issues, bifurcation of the legal and equitable issues is appropriate. Defs' Opp. to Pl.'s MIL No. 3 at 2, Dkt. No. 115.  Defendants argue, however, that in this case, the legal and equitable issues overlap because Plaintiff's willful infringement claim relies on whether Defendants had access to Plaintiff's designs, and Defendants' equitable defenses concern in large part whether Plaintiff intentionally gave Defendants access to the designs through foreign markets, and whether Defendants accessed the designs through those foreign suppliers, showing

---

damages.  The Court rejects this proposal as it is unlikely to save time, may inconvenience the jury, and is not required by 17 U.S.C. § 504(c)(1).

[4] At the Final Pretrial Conference, counsel for Defendants clarified that Defendants intend to pursue the defenses of misuse of copyright/unclean hands, laches, waiver, estoppel, and mitigation of damages.  For purposes of considering Plaintiff's MIL No. 3, the Court includes misuse of copyright/unclean hands, laches, waiver, and estoppel in its reference to Defendants "equitable affirmative defenses."  As discussed *supra* in footnote 1, "mitigation of damages" is a question for the jury, and the Court thus does not include this defense in its discussion of Defendants' equitable affirmative defenses.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

1  Plaintiff's unclean hands and misuse of copyright.[5]  *Id.* at 2-3.  Defendants thus urge

2  the Court to submit the evidence concerning the defenses to the jury to render factual

3  findings and an advisory verdict.  *Id.*

4          Contrary to their characterization, Defendants' equitable affirmative defenses

5  do not overlap with Plaintiff's claims in a way that overcomes the unfair prejudice

6  that would likely result by allowing Defendants to present its unclean hands and

7  misuse evidence to the jury.  "The Constitutional right to a jury trial extends only to

8  legal as opposed to equitable claims."  *Revolution Eyewear, Inc. v. Aspex Eyewear,*

9  *Inc.*, No. CV02-01087, 2008 WL 6873811, at *3 (C.D. Cal. Jan. 3, 2008) (quotations

10  omitted) (citing *Beacon Theatres Inc. v. Westover*, 359 U.S. 500, 510–11 (1959)).

11  And "while a court may seek the jury's aid as a fact-finding body in a non-jury

12  trial," (*Id.*) courts routinely bifurcate the legal and equitable issues at trial where the

13  issues are divisible and evidence submitted in support of the equitable issues would

14  be unfairly prejudicial.  *See, e.g., JIPC Mgmt., Inc. v. Incredible Pizza Co*., No. CV

15  08-04310, 2009 WL 8591607, at *20 (C.D. Cal. July 14, 2009) (bifurcating unclean

16  hands defense from trial on liability because the defense placed "both parties' good

17  or bad faith at issue in ways that are not relevant to a finding of liability for

18  trademark infringement" and "[p]resenting evidence on these issues would pose a

19  risk of prejudice and confuse the jury") (citing Fed. R. Civ. Proc. 42(b) and *Danjaq*

20  *LLC v. Sony Corp*., 263 F.3d 942, 961 (9th Cir. 2001) ("One favored purpose of

21  bifurcation is to accomplish just what the district court sought to do here-avoiding a

22  difficult question by first dealing with an easier, dispositive issue.")).

23          Here, Defendants' evidence of Plaintiff's wrongful injection of the designs

24  into foreign markets is irrelevant to the question of willful infringement.  Plaintiff's

25  theory of access does not concern foreign markets – to the contrary, Plaintiff

26

27          [5] Defendants do not address the other equitable affirmative defenses listed in their

28  Memorandum of Contentions of Facts and Law, and the Court thus assumes that Defendants concede these defenses may be easily bifurcated to the extent Defendants pursue them.

8

contends that Defendants accessed the designs through their dealings with Plaintiff directly.  Defendants thus need not address Plaintiff's intentional injection of the designs into foreign markets to rebut Plaintiff's willful infringement claim, and indeed, such evidence does not appear to be relevant.  Rather, Defendants' evidence concerning Plaintiff's injection of the designs in foreign markets is tied only to Defendants' theory of unclean hands and misuse of copyright.  And as a result, this evidence is divisible from the other factual issues at trial and need not be presented to the jury even for an advisory verdict.[6]  The Court concludes that bifurcation of Defendants' equitable affirmative defenses is appropriate to avoid unfair prejudice to Plaintiff and potentially avoid presentation of evidence on those defenses if the jury finds no liability.  *See* Fed. R. Civ. Proc. 42(b); *Danjaq LLC,* 263 F.3d at 961.  The Court therefore **ORDERS** that this proceeding shall be **BIFURCATED** into a first phase concerning liability and damages and a second phase concerning Defendants' equitable affirmative defenses, keeping in mind that "in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'"  *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993).  Plaintiff's MIL No. 3 is **GRANTED**.

---

[6] At the Final Pretrial Conference, counsel for Defendants argued that the Court was bound to present all factual questions to the jury, even those facts presented only in support of equitable defenses.  Counsel cited no authority in support of this argument, however, and the Court does not find this to be a correct statement of the law.  Rather, the Court is the fact finder on equitable questions to the extent the jury has not made implicit or explicit factual findings otherwise.  *See, e.g., Granite State Ins. Co. v. Smart Modular Techs., Inc.,* 76 F.3d 1023, 1028 (9th Cir. 1996) (recognizing that "the district court, not the jury, was the appropriate trier of fact" on the defendant's equitable defense); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'").  Accordingly, to extent the issues do not overlap, the Court need not allow for presentation of evidence on Defendants' equitable defenses in the jury trial phase.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

### III.    MOTIONS IN LIMINE

#### A.    Issues for Trial

The Court previously summarized Plaintiff's claims and the facts in this case in the Court's Order re Plaintiff's Motion for Summary Adjudication ("MSJ Order," Dkt. No. 83). In this Order, the Court granted summary judgment in favor of Plaintiff on the issue of Plaintiff's ownership of the copyrights to LMC278 and 10875DV. MSJ Order at 24. Thus, the remaining issues for trial are (1) whether Plaintiff's claim of infringement against Anthropologie concerning LMC278 was released by Plaintiff in November 2014; (2) whether Defendants infringed Plaintiff's copyrights in LMC278 and 10875DV; (3) whether Defendants' infringement was willful; (4) what damages are appropriate; and (5) whether Defendants' affirmative defenses bar a finding of liability or Plaintiff's recovery. *See* Proposed FPTCO at 4-10.

#### B.    Legal Standard

The Court's power to entertain and rule on motions in limine stems from "the court's inherent power to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). But while district courts have broad discretion in ruling on motions in limine, such motions should not be used as instruments of summary judgment or dismissal. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, Case No. CV 12-0329, 2014 WL 8096334, *5 (C.D. Cal. April 21, 2014) ("It is not proper to use motions in limine as a substitute for summary judgment."); *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1094 (C.D. Cal. 2012) (providing examples of proper and improper motions in limine); *Engman v. City of Ontario*, No. CV 10-0284, 2011 WL 2463178, *9 (C.D. Cal. June 20, 2011) ("Motions in limine are an inappropriate means to resolve factual . . . disputes or weigh evidence.").

Furthermore, "[t]o exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard,

1    evidentiary rulings should be deferred until trial so that questions of foundation,

2    relevancy and potential prejudice may be resolved in proper context." *Goodman v.*

3    *Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1047 (2013) (internal

4    quotations and citations omitted) *rev'd in part on other grounds*, 613 Fed. Appx. 610

5    (9th Cir. 2015).  For this reason, motions in limine to exclude evidence are

6    appropriately granted concerning specific objections to specific evidence.  *See*

7    *Colton Crane Co. v. Terex Cranes Wilmington, Inc*., Case No. CV 08-8525, 2010

8    WL 2035800, *1 (C.D. Cal. May 19, 2010).  Motions in limine to exclude broad

9    categories of evidence are usually improper "as the court is almost always better

10   situated to rule on evidentiary issues in their factual context during trial." *Id*.

11          Finally, a court's rulings on motions in limine are inherently preliminary and

12   "are not binding on the trial judge [who] may always change his mind during the

13   course of trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).  Even if a

14   court initially denies or grants a motion in limine, "[a] court is almost always better

15   situated during the actual trial to assess the value and utility of evidence." *Colton*

16   *Crane Co.*, 2010 WL 2035800, at *1 (quoting *Wilkins v. Kmart Corp*., 487 F. Supp.

17   2d 1216, 1218 (D. Kan. 2007)).

18          **C.    Parties' Cross-Motions to Exclude Lay Witness Expert Testimony**
19          **(Plaintiff's MIL No. 4 and Defendants' MIL No. 4)**

20          The Court turns first to Plaintiff's MIL No. 4 and Defendants' MIL No. 4, as

21   these motions contain overlapping issues.  Defendants' MIL No. 4 seeks a broad

22   order precluding Plaintiff "from eliciting any expert testimony or opinions from a

23   lay witness."  Defs' MIL No. 4 at 1, Dkt. No. 98.  Plaintiff's MIL No. 4 is based on

24   the same concept, but seeks an order barring Defendants from presenting any

25   evidence on profit apportionment between sales of the two allegedly infringing

26   garments because "competent evidence of apportionment is outside the realm of lay

27   testimony, and Defendants have not designated an expert witness to testify as to this

28   issue."  Pl.'s MIL No. 4 at 1, Dkt. No. 94.

1    The parties agree that neither side has appointed an expert and that Rule 701

2    of the Federal Rules of Evidence limits lay witness testimony to opinions that are

3    "(a) rationally based on the witness's perception; (b) helpful to clearly understanding

4    the witness's testimony or to determining a fact in issue; and (c) not based on

5    scientific, technical, or other specialized knowledge within the scope of Rule 702."

6    Fed. R. Evid. 701; *see* Defs' MIL No. 4 at 2; Pl's MIL No. 4 at 2.  The parties

7    further agree that lay witnesses may testify as to the profits of a business and give

8    lay testimony as to damages when such testimony is within the witness's

9    particularized knowledge.  Defs' Opp. to Pl's MIL No. 4 at 3-4; Pl's Opp to Defs'

10   MIL No. 4 at 1-2.   It also appears that, in light of Defendants' description of the

11   testimony anticipated from the witnesses Bari Fischer and Jodie Dolan, both sides

12   concede that lay witnesses may testify concerning the issue of substantial similarity.

13   Pl's Opp. to Defs' MIL No. 4 at 2-3; Joint Witness List at 3, Dkt. No. 90.

14   Given these concessions, Defendants' MIL No. 4 is overly broad and one-

15   sided.  The Court cannot determine with specificity what lay witness testimony will

16   be inadmissible under Rule 701 without an offer of proof, particularly in light of the

17   parties' agreement that some lay witness opinion testimony will be admissible.

18   Defendants have also offered no rationale for why the Court should enter the order

19   requested against Plaintiff alone when neither side has appointed an expert.

20   Accordingly, the Court **DENIES** Defendants' MIL No. 4 without prejudice to

21   renewal of objections at trial.

22   Plaintiff's MIL No. 4 is equally overbroad, but for a different reason.  Plaintiff

23   cites *Sheldon v. Metro-Goldwyn Pictures, Inc.*, 309 U.S. 390 (1939), for the

24   proposition that expert testimony on the issue of apportionment of profits is

25   "indispensable," and infers from this principle that lay witness testimony on the

26   issue of profit apportionment must be inadmissible.  Pl's MIL No. 4 at 1-2.  *Sheldon*

27   does not so hold.  Rather, as Defendants point out, the Court in *Sheldon* recognized

28   that the proof required to show profit apportionment need only be a "reasonable

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

approximation" which "may be attained 'through the testimony of experts and persons informed by observation and experience.'" *Sheldon*, 309 U.S. at 404 (quoting *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 647 (1915)). The Court in *Sheldon* also did not hold that expert testimony is always indispensable for the issue of profit apportionment. Rather, the Court observed that the testimony of experts **and** persons informed by observation and experience is "said to be 'generally helpful and at times indispensable in the solution of such problems.'" *Id.* (quoting *Dowagiac Mfg. Co.*, 235 U.S. at 647). Plaintiff has cited no other authority in support of its MIL No. 4, and the Court concludes that *Sheldon* contemplates and allows for the presentation of lay witness testimony concerning profit apportionment. Accordingly, the Court **DENIES** Plaintiff's MIL No. 4 without prejudice to renewal of objections at trial.

### D.    Plaintiff's Remaining MILs

#### 1.    Plaintiff's MIL No. 1 to Exclude Witnesses Not Timely Disclosed in Discovery

Plaintiff's MIL No. 1 seeks an order under Rule 37(c)(1) of the Federal Rules of Civil Procedure excluding the testimony of Cynthia Vincent, Michael Sabier, and Michael Silbert on the grounds that Defendants failed to timely disclose these witnesses as required by Rule 26(a)(3)(A)-(B) of the Federal Rules of Civil Procedure. Pl.'s MIL No. 1 at 1-2, Dkt. No. 91. Defendants appear to concede that they did not "officially" disclose these witnesses until February 2016. But concerning Mr. Sabier, offered to testify concerning Dolan Group, Inc.'s business practices and interactions with Plaintiff, Defendants argue that both parties had notice of Mr. Sabier as potential witness through the course of discovery. Defs' Opp. to Pl.'s MIL No. 1 at 2, Dkt. No. 113. And concerning Ms. Vincent and Mr. Silbert, offered to testify concerning Plaintiff's November 2014 release of claims, Defendants argue that they were not obligated to disclose Ms. Vincent and Mr. Silbert until the Court issued its MSJ Order on February 2, 2016, which found

1    Plaintiff's November 2014 release of claims to be ambiguous. *Id*. at 2. Defendants

2    contend that, until the Court issued its MSJ Order, extrinsic evidence concerning the

3    Release was not relevant or admissible and thus Ms. Vincent and Mr. Silbert's

4    testimony was not relevant or admissible until that point. *Id*. at 2-4. The Court will

5    address each witness in turn.

6         First, regarding Mr. Sabier, Defendants contend that Plaintiff itself produced

7    documents containing correspondence between Plaintiff and Mr. Sabier and that Ms.

8    Dolan identified Mr. Sabier as another owner of Dolan Group, Inc. during her

9    deposition. *Id*. at 6. Defendants thus conclude that their failure to disclose Mr.

10   Sabier was harmless because Plaintiff was on notice of his existence and

11   involvement with Dolan. *Id*. Citing *R&R Sails, Inc. v. Ins. Co. of the Pacific*, 673

12   F.3d 1240, 1247-48 (9th Cir. 2012), Defendants also argue that, to the extent

13   Plaintiff suffered any prejudice due to Defendants' failure to disclose his identify,

14   Defendants will make Mr. Sabier available for deposition before trial and thus any

15   potential prejudice is curable. *Id*. at 7.

16        The Court finds that Defendants' failure to disclose Mr. Sabier was not

17   substantially justified or harmless. *See* Fed. R. Civ. Proc. 37(c)(1). While

18   "supplemental initial disclosures are not required where the subject witnesses are

19   otherwise disclosed during the discovery process or in writing," such witnesses

20   "must be adequately disclosed." *Finjan, Inc. v. Proofpoint, Inc*., No. 313CV05808,

21   2015 WL 9900617, at *2 (N.D. Cal. Oct. 26, 2015). The mere mention of a witness

22   name in a deposition or document is generally not sufficient to meet this standard.

23   *See Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912, 2012 WL

24   2838431, at *2 (N.D. Cal. July 10, 2012) ("As other courts have recognized, merely

25   mentioning the individual's name at a deposition or in a discovery response may not

26   be enough to put the other party on notice that the individual is being disclosed as a

27   trial witness.") (citing *Vieste, LLC v. Hill Redwood Dev*., No. C-09-04024, 2011 WL

28   2181200, at *2 (N.D. Cal. June 3, 2011) (striking witnesses from supplemental

14

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

disclosures because although the deponent testified that the witnesses were
employees, she did not testify they had any information related to the case and a
subsequent interrogatory response further obscured the role they played) and *Ollier
v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 343 (S.D. Cal. 2010)
("Certainly the mere mention of a name in a deposition is insufficient to give notice
to the opposing party that defendants intend to present that person at trial.")).
Instead, the party offering the witness must demonstrate how the discovery process
disclosed that the witness was likely going to be called at trial.  *See, e.g., Finjan,
Inc.*, 2015 WL 9900617, at *3 ("[A]t most, defendants' initial and supplemental . . .
contentions and . . . disclosures identified references that defendants find important.
They do not provide sufficient notice that Ross and Kennedy might be called as
witnesses.  The Ross and Kennedy references were only two of hundreds of
references disclosed, and defendants do not convincingly explain how Finjan was to
deduce from those disclosures that defendants would call Ross and Kennedy at
trial.").  Here, Defendants have failed to make this connection – they cite only a bare
reference to Mr. Sabier in Ms. Dolan's deposition and attach documents that reflect
only that Mr. Sabier's first name was mentioned to Plaintiff in correspondence
concerning certain invoices.  *See* Declaration of Tara Martin in support of Defs'
Opp. to Pl.'s MIL No. 1, Exs. C-D.  Neither reference establishes that Mr. Sabier's
name was adequately disclosed as a potential witness at trial.

Defendants are also not entitled to simply cure their omission by re-opening
discovery concerning Mr. Sabier now.  Contrary to Defendants' characterization, the
Ninth Circuit in *R & R Sails, Inc.* held only that, when a sanction amounts to
dismissal of a claim, a district court is required to consider lesser sanctions,
including the possibility of a continuance and reopening of discovery.  673 F.3d at
1247.  Here, Defendants have made no showing that excluding Mr. Sabier will result
in a practical dismissal of Defendants' case.  Thus, the Court may apply Rule
37(c)(1) as a "self-executing" sanction and will do so to exclude Mr. Sabier as

witness.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

The Court does not reach the same conclusion concerning Ms. Vincent.  As an initial point, however, extrinsic evidence (including testimony from Ms. Vincent or Mr. Silbert) concerning the November 2014 Release did not "become" relevant or admissible when the Court issued its Order ruling that the Release was ambiguous.  Rather, extrinsic evidence concerning the Release became relevant at the very least when Defendants sent a demand letter for dismissal of Plaintiff's claim based on the Release in October 2015 and immediately thereafter propounded discovery on the meaning of the Release.  *See* Declaration of Stephen Doniger in support of Pl.'s Opp. to Defs.' Ex Parte Application, Exs. 1-2, Dkt. No. 110; *see also id.* at Ex. 2, Request for Admission No. 54 ("Admit that the Settlement Agreement and Release of Claims you executed in the Mochi Case in November of 2014 released Anthropologie from any and all liability for YOUR claims of copyright infringement related to Subject Design B.").  The Court's ruling regarding the Release occurred months after both sides became aware of the Release and Defendants' intent to use the Release to bar Plaintiff's claims against Anthropologie, as evidenced by Defendants' counsel's correspondence dated October 12, 2015 as well as Defendants' discovery requests and deposition questions.  *See* Declaration of Stephen Doniger in support of Pl.'s Opp. to Defs.' Ex Parte Application, Exs. 1-6, Dkt. No. 110.  And given Plaintiff's refusal to agree with Defendants' interpretation of the Release in the October 2015 correspondence and discovery requests, the parties were equally aware during the discovery period that the meaning of the Release was in dispute and potential ambiguous.  *See id.* at Exs. 1-2; *see also id.* at Ex. 6.  Defendants thus cannot justify their failure to disclose Ms. Vincent or Mr. Silbert by arguing that their knowledge was irrelevant at the time.  Rather, the meaning of the Release was in dispute before discovery closed, and Ms. Vincent and Mr. Silbert thus had discoverable information in support of Defendants' defense at

that time.  Defendants were thus obligated to disclose these witnesses in the fall of 2015.  *See* Fed. R. Civ. Proc. 26(a)(3)(A).

The Court now turns to whether Defendants' failure to disclose either witness was harmless or substantially justified.  *See* Fed. R. Civ. Proc. 37(c)(1).  In contrast with Mr. Sabier, the Court finds that Ms. Vincent was adequately disclosed as a potential witness when Defendants produced the Release and highlighted its importance in their discovery requests and correspondence.  Plaintiff conducted discovery on the parties' intent concerning the Release, and Ms. Vincent is a signatory on the face of the Release whose intent was readily relevant.  Plaintiff was thus on notice of Ms. Vincent's identity as a potential witness at trial, and Defendants' failure to disclose Ms. Vincent in their supplemental disclosures was harmless.  And, to the extent Plaintiff has suffered any prejudice due to Defendants' late disclosure, the Court will allow the parties to depose Ms. Vincent prior to the start of trial.

The Court concludes, however, that Defendants' failure to disclose Mr. Silbert was not harmless or substantially justified.  Mr. Silbert is not a signatory to the Release, and Defendants have presented no evidence to suggest that Plaintiffs were aware through discovery that Mr. Silbert participated in negotiating the Release or had any personal knowledge of the signatories' intent concerning the Release.[7]  As a result, Defendants' failure to disclose Mr. Silbert was not harmless.  And as with Mr. Sabier, Defendants have made no showing that excluding Mr. Silbert will result in a practical dismissal of Defendants' case.  Thus, the Court may apply Rule 37(c)(1) as

---

[7] At the Final Pretrial Conference, counsel for Defendants argued that counsel for Plaintiff must have been aware of Mr. Silbert's involvement because Anthropologie was originally a party in the Green Mochi case and because Plaintiff's counsel represented Plaintiff in that case and must have interacted with Mr. Silbert in negotiating the Release.  Counsel cites no authority to suggest, however, that the Court must impute Plaintiff's counsel's knowledge to Plaintiff in applying Rule 37(c)(1).  Moreover, even if Anthropologie was a party in the Green Mochi case, Defendants have still failed to show that information **produced in discovery** made clear that Mr. Silbert was involved in negotiating the Release and would be a potential witness at trial in the present case.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

1  a "self-executing" sanction and will do so to exclude Mr. Silbert as a witness.[8]  *See*
2  *Yeti by Molly, Ltd.*, 259 F.3d at 1106.  The Court therefore **GRANTS** Plaintiff's
3  MIL No. 1 as it concerns Mr. Sabier and Mr. Silbert and **DENIES** Plaintiff's MIL
4  No. 1 as it concerns Ms. Vincent.

5  　　　　　　　　　2.　　　Plaintiff's MIL No. 2 to Limit Testimony of Matthew Seror

6  　　　　Plaintiff's MIL No. 2 seeks to limit the trial testimony of Matthew Seror, the
7  attorney for the defendants in the Green Mochi case who helped draft the Release.
8  Pl.'s MIL No. 2 at 1, Dkt. No. 92.  At his deposition in this case, Mr. Seror asserted
9  the attorney-client privilege and work product doctrine in answer to many of
10 Classical Silk's questions concerning Mr. Seror's or his client's understanding of the
11 Release.  Declaration of Stephen Doniger in support of Pl.'s MIL No. 2, Ex. 1, Dkt.
12 No. 92-1.  Plaintiff argues that, based on these privilege assertions, Mr. Seror may
13 not testify at trial concerning his or his client's understanding of the Release because
14 a reversal would use the attorney-client privilege as both a shield and sword.  Pl.'s
15 MIL No. 2 at 1-2 (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th
16 Cir. 1992)).

17 　　　　Both parties agree, however, that Mr. Seror, though his counsel Mr. William
18 Miller, asserted the attorney-client privilege and work product doctrine on behalf of
19 his clients in the Green Mochi case, not on behalf of Defendants in this case, who
20 are not Mr. Seror's clients.  *Id.* at 2; Defs' Opp. to Pl.'s MIL No. 2 at 3, Dkt. No.
21 114.  Defendants thus argue that, because they did not invoke the privilege to
22 prevent the testimony from coming out at deposition, they are not barred from
23 attempting to elicit the testimony at trial, as they propose in the parties' Joint
24 Witness List.  Defs' Opp. to Pl.'s MIL No. 2 at 3-4; *see also* Joint Witness List at 4,
25 Dkt. No. 90.  Defendants are correct.  Contrary to Plaintiff's arguments, the holding
26 in *Hoffman v. Tonnemacher*, 362 F. App'x 839, 841 (9th Cir. 2010), does not apply

27
28 　　　　[8] In light of this ruling, the Court need not reach Plaintiff's argument that Mr. Silbert's testimony would be irrelevant.  *See* Pl.'s MIL No. 1 at 2-3.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

here because, in that case, the Defendants asserted the privilege to prevent discovery of the hospital logs, which then prevented them from waiving the privilege and presenting testimony concerning those logs at trial. Here, Mr. Seror asserted the attorney-client privilege and work product doctrine, not Defendants. As result, the sword-shield doctrine does not apply to prevent Defendants from attempting to elicit such testimony at trial, and the burden will be on Mr. Seror to decide whether to protect the privilege and work product that he asserted at deposition. Plaintiff's MIL No. 2 is **DENIED** without prejudice to renewal of objections at trial.[9]

### E. Defendants' Remaining MILs

1. <u>Defendants' MIL No. 1 to Exclude Evidence or Argument Concerning Unrelated Lawsuits or Claims and MIL No. 2 to Exclude Testimony of Plaintiff's Counsel Scott Burroughs</u>

The Court turns now to Defendants' MILs. Defendants' MIL Nos. 1 and 2 together seek an order excluding evidence concerning summary judgment rulings against Urban Outfitters, Inc. in two other lawsuits – *United Fabrics Int'l, Inc. v. Urban Outfitters, Inc. et al.*, Case No. CV 10-07895-CBM (PLAx), Dkt. No. 79 (C.D. Cal. April 16, 2012) and *Unicolors, Inc. v. Urban Outfitters, Inc., et al.*, Case No. CV 14-01029-SJO (VBKx), Dkt. No. 164 (C.D. Cal. Feb. 17, 2015), which Plaintiff intends to present through its attorney Scott Burroughs and through a court instruction.[10] Defs' MIL Nos. 1 & 2, Dkt. Nos. 95-96; Pls' Opps. to Defs' MIL Nos. 1 & 2, Dkt. Nos. 118-19; *see also* Pl.'s Request for Judicial Notice and Advisement

---

[9] Though the basis of Plaintiff's MIL No. 2 is the attorney-client privilege issue, Plaintiff in its conclusion to the motion seeks an order limiting Mr. Seror's testimony "to the substance of his deposition on the subjects of the questions posed to him." Assuming Mr. Seror is called as a live witness, however, Plaintiff cites no authority to support limiting Mr. Seror's testimony to the subjects covered in deposition. To the extent Plaintiff seeks such an order as part of its MIL No. 2, this request is **DENIED**.

[10] Defendants identify the case number for the *Unicolors* case as Case No. 15-155507, but this appears to be the appellate case number, not the district court case number. *See* Pl.'s Opp. to Defs' MIL No. 1 at 2; Pl.'s Memorandum of Contentions of Fact and Law at 7, Dkt. No. 88; *see also Unicolors, Inc. v. Urban Outfitters, Inc., et al.*, Case No. CV 14-01029-SJO (VBKx) (C.D. Cal. 2014), Dkt. No. 209 (identifying case as Circuit Court Appellate Docket Number 15-55507).

---

19

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

of Jury, Dkt. No. 132. Plaintiff argues that evidence concerning these two rulings is admissible under Rule 406 of the Federal Rules of Evidence, which permits evidence of a party's habit or routine practice "to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Pl.'s Opp. to Defs' MIL No. 1 at 1 (quoting Fed. R. Evid. 406).

The Court finds, however, that the summary judgment decisions from these two cases do not constitute admissible evidence under Rule 406. To the contrary:

> It is only when the examples offered to establish such pattern of conduct or habit are numerous enough to base an inference of systematic conduct and to establish one's regular response to a repeated specific situation or, to use the language of a leading text, where they are "sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any of prejudice and confusion," that they are admissible to establish pattern or habit.

*Wilson v. Volkswagen of Am., Inc*., 561 F.2d 494, 511 (4th Cir. 1977) (quotations omitted) *cited with approval in Mathes v. The Clipper Fleet,* 774 F.2d 980, 984 (9th Cir. 1985) *and Morris v. Long*, No. 1:08-CV-01422, 2012 WL 3276938, at *12 (E.D. Cal. Aug. 9, 2012). "Habit 'describes one's regular response to a repeated specific situation.'" *United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001) (quoting Fed. R. Evid. 406 advisory committee note) (describing conduct that qualifies as habit as "semi-automatic") *overruled on other grounds in United States v. Lopez,* 484 F.3d 1186, 1192 (9th Cir. 2007). Thus, "[i]n deciding whether certain conduct constitutes habit, courts consider three factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *Id.*

//

//

//

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

Here, findings of liability in two summary judgment decisions spaced three years apart (including one that is not final but instead currently on appeal[11]) are not numerous or regular enough to show a pattern of conduct. Nor does a corporation's infringement in two cases qualify as "reflexive" or "semi-automatic" behavior. And unlike the only Ninth Circuit case Plaintiff cites – *Rowley v. Am. Airlines,* 885 F. Supp. 1406, 1412 (D. Or. 1995), where the court admitted evidence of a routine business practice from representatives of the company – these two summary judgment decisions do not present sufficiently clear evidence of a pattern to outweigh the certain prejudice to Defendants and confusion of the jury that would result from the introduction of these two other matters.[12] Either in testimony or court instruction form, these summary judgment decisions are thus inadmissible under Rules 403 and 404 of the Federal Rules of Evidence.[13] *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

---

[11] *See Unicolors, Inc.*, Case No. CV 14-01029-SJO (VBKx), Dkt. Nos. 206, 209 (identifying case as Circuit Court Appellate Docket Number 15-55507).

[12] The other case Plaintiff cites, *Lauratex Textile Corp. v. Allton Knitting Mills Inc*., 517 F. Supp. 900, 903 (S.D.N.Y. 1981), is also unpersuasive. There, the court did not discuss the application of any evidentiary rules and considered evidence of ten other lawsuits only in discussing what amount of statutory damages to award. This nonbinding case is not sufficiently analogous to the situation here, where Plaintiff presents only two cases and seeks to present them to the jury on the issue of liability.

[13] Though Plaintiff did not raise this ground in its opposition briefs, the Court also finds that the two decisions are not admissible under Rule 404(b) of the Federal Rules of Evidence. Evidence of prior wrongful acts may be admitted under Rule 404(b) to prove motive, intent, lack of mistake, etc. if "(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994). Even so, "even if all four conditions are met, the evidence may still be excluded if under a Federal Rule of Evidence 403 analysis its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400-01 (9th Cir. 1991). Here, the Court finds that these decisions offer only slight probative value, which is substantially outweighed by the risk of unfair prejudice to Defendants.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

cumulative evidence."); Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").  The Court thus **GRANTS** Defendants' MIL Nos. 1 and 2[14] and **DENIES** Plaintiff's Request for Judicial Notice and Advisement of Jury (Dkt. No. 132).[15]

### 2.   Defendants' MIL No. 3 to Exclude Evidence or Argument Concerning Defendants' Financial Condition

Defendants' MIL No. 3 seeks a broad order excluding evidence or argument of Defendants' undefined "financial condition" on the grounds that such evidence is more prejudicial than probative and should be excluded under Rule 403.  Defs' MIL No. 3 at 2-3 (citing *In re Homestore.com, Inc.*, No. CV 01-11115, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) ("Evidence of a party's financial condition is generally not relevant and can be unduly prejudicial . . . .")).  As Plaintiff rightly notes, however, Defendants' motion is entirely too vague.  The parties appear to agree that at least some evidence of the parties' profits will be relevant at trial, and Defendants have not specified what evidence will fall under an order concerning "financial condition."  *See* Defs' Opp. to Pl's MIL No. 4 at 3-4; Pl's Opp. to Defs' MIL No. 4 at 1-2.  Consequently, the Court declines to issue an order barring all evidence of Defendants' "financial condition" to avoid issuing an overly broad and vague order.  *See generally Miller v. City of Los Angeles,* 661 F.3d 1024, 1028 (9th Cir. 2011).  Defendants' MIL No. 3 is **DENIED** without prejudice to objections on the above grounds concerning specific evidence at trial.

---

[14] Because the Court excludes Plaintiff's evidence in any form, the Court does not reach Defendants' argument concerning whether attorney Scott Burroughs may testify under the California Rules of Professional Conduct.  *See* Defs' MIL No. 2 at 3-5.

[15] On March 16, 2015, two days before the scheduled Final Pretrial Conference, Plaintiff filed an additional Request for Judicial Notice and Advisement of Jury seeking to submit another summary judgment order from the Southern District of New York – *MPD Accessories B.V. v. Urban Outfitters, Inc. et al.*, 12-cv-6501 LTS (KNF) (S.D.N.Y. May 30, 2014) – on the same grounds as the other two orders.  *See* Dkt. No. 145.  This additional request does not change the Court's analysis, and the Court **DENIES** this second Request for the same reasons stated above.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

3.   Defendants' MIL No. 7 to Exclude Evidence or Argument
Regarding the TJX Commercial

Defendants' MIL No. 7 seeks to exclude evidence or argument concerning a television commercial from TJX that includes approximately one second of footage showing a woman wearing the jacket that Plaintiff alleges infringes on Plaintiff's 10875CV design.  Defs' MIL No. 7 at 3, Dkt. No. 101.  Defendants argue this evidence must be excluded, first, because Magistrate Judge Wilner previously held that Plaintiff could not obtain sales evidence related to the commercial, thus indicating that the commercial is irrelevant, and second, because Plaintiff has not shown more than a "speculative" connection between the commercial and Defendants' profits, making the evidence irrelevant to the question of apportionment of profits under 17 U.S.C. § 504(a).  *Id.* at 4-6.  Plaintiff does not respond to Defendants' citation to Judge Wilner's order, but argues that evidence of the commercial is relevant to rebut Defendants' theory concerning apportionment of profits and to support a calculation of statutory damages under 17 U.S.C. § 504(c)(1).[16]  Pl.'s Opp. to MIL No. 7 at 1-3, Dkt. No. 124.

As an initial matter, contrary to Defendants' interpretation, Judge Wilner's discovery order issued November 4, 2015 does not require automatic exclusion of

---

[16] Plaintiff also argues that the evidence is relevant because "one of the bases for its claim is that TJX ran a national commercial featuring Plaintiff's work in violation of Plaintiff's rights under 17 U.S.C. § 106, which provides a copyright holder the exclusive right 'to display the copyrighted work publicly.'"  Pl.'s Opp. to MIL No. 7 at 1.  Plaintiff has failed to plead this theory of liability in its Complaint or included it in the parties' Proposed FPTCO, however.  The Complaint makes no mention of any TJX commercial, and Plaintiff's copyright infringement claim alleges only that "Defendants, and each of them, infringed Plaintiff's copyright by creating, making and/or developing directly infringing and/or derivative works from Subject Designs and by producing, distributing and/or selling Subject Products through a nationwide network of retail stores, catalogues, and through on-line websites."  Compl. ¶ 20.  Plaintiff's claim does not include any allegation of infringement by display.  Plaintiff likewise contends in the proposed FPTCO that Defendants violated 17 U.S.C. § 106(1)-(3), while the right to public display is covered in 17 U.S.C. § 106(5), which Plaintiff does not contend was violated.  *See* Proposed FPTCO at 5; 17 U.S.C. § 106.  Accordingly, because Plaintiff has not pled any theory of liability based on Defendants' display of the TJX Jacket in the commercial, the Court cannot consider the TJX commercial evidence relevant based on that theory.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

the TJX commercial as evidence at trial.  In that order, Judge Wilner considered
whether to grant Plaintiff's motion to compel TJX to produce "'all documents that
show or reflect the total sales of each of your retail stores' on a monthly basis for a
two-year period before and after the airing" of the TJX commercial.  Dkt. No. 43 at
1.  Judge Wilner held that, while "Plaintiff may well be entitled to some <u>limited</u>
amount of inquiry into the potential benefit that TJX derived based on the glimpse of
the jacket in the advertisement," the otherwise "modest size" of Defendants'
allegedly infringing actions weighed against allowing a fishing expedition into a
four year period of TJX's total sales in each of its retail stores.  *Id.* at 3.  Notably,
Judge Wilner did not hold that the TJX commercial itself was irrelevant – only that
its unproven connection to TJX's overall annual sales could not justify a large scale
investigation into each retail store's annual sales for a four-year period.  *See id.* at 2
("Directly put, the Court has no rational basis to conclude that (a) a one-second
snippet of (b) one infringing item (c) worn in a commercial shown a handful of
times (d) on a minor cable network could plausibly move the needle of sales of a
multi-billion dollar company.").   The Court is thus not obligated to exclude
evidence or argument of the TJX commercial based solely on Judge Wilner's order.

Even so, Judge Wilner rightly noted that a copyright owner is only entitled to
an alleged infringer's profits "[i]f the alleged infringement did 'more than merely
contribute somehow' to the infringer's profits in a manner that can be established in
a manner that is 'more than mere speculation.'"  *Id.* (quoting *Andreas v. Volkswagen
of Am., Inc*., 336 F.3d 789, 796-97 (8th Cir. 2003) (quotation omitted) and citing
*Polar Bear Prods., Inc. v. Timex Com*., 384 F.3d 700, 708 (9th Cir. 2004)).  Here,
Plaintiff has made no offer of proof to show how the commercial is relevant to
prove, beyond mere speculation, the existence of a causal link between Defendants'
alleged infringement and indirect profits.  *See Polar Bear Prods., Inc.*, 384 F.3d at
710-11 ("[B]ecause the amount of profits attributable to the infringement in an
indirect profits case is not always clear, 'we have held that a copyright holder must

1    establish the existence of a causal link before indirect profits damages can be

2    recovered.'  'When an infringer's profits are only remotely and speculatively

3    attributable to infringement, courts will deny recovery to the copyright owner.'")

4    (citations omitted).  And contrary to Plaintiff's assertions, it appears from the

5    parties' Joint Witness List that TJX does not intend to call any witnesses to testify

6    concerning its sales or the apportionment of its profits.  *See* Dkt. No. 90.  As a result,

7    Plaintiff has failed to show that the TJX commercial is relevant either to its prima

8    facie case or rebuttal of Defendants' evidence concerning actual damages.

9         As it concerns statutory damages, however, Plaintiff has sufficiently

10   demonstrated that the TJX commercial is relevant to the jury's determination of

11   what statutory damages are appropriate.  *See generally Dream Games of Arizona,*

12   *Inc. v. PC Onsite,* 561 F.3d 983, 992 (9th Cir. 2009) ("The Supreme Court has held

13   that 'the Seventh Amendment provides a right to a jury trial on all issues pertinent to

14   an award of statutory damages under § 504(c) of the Copyright Act, including the

15   amount itself.'  We have subsequently interpreted *Feltner* to uphold the

16   constitutionality of the statutory damages provision, provided that at the plaintiff's

17   election of a jury trial, we replace the term 'court' in § 504(c) with 'jury.'") (quoting

18   *Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 355 (1998)).   In

19   determining an award of statutory damages, "the jury has wide discretion in

20   determining the amount of statutory damages to be awarded, constrained only by the

21   specified maxima and minima.  The jury is guided by what is just in the particular

22   case, considering the nature of the copyright, the circumstances of the infringement

23   and the like." *Id.* at 992 (quotations and citations omitted); *accord* Cmt., Ninth Cir.

24   Model Jury Instruction 17.25 Copyright—Damages—Statutory Damages (17 U.S.C.

25   § 504(c))) (citing *Harris v. Emus Records Corp*., 734 F.2d 1329, 1335 (9th Cir.

26   1984)).  And though perhaps of limited probative value, the TJX commercial

27   arguably supplies evidence of the circumstances of TJX's alleged infringement and

28   its use in TJX's marketing.  It is thus relevant to the jury's calculation of statutory

damages, and as a result, presents no risk of unfair prejudice or confusion of the issues as Defendants suggest.  *See* Defs' MIL No. 7 at 6.  Accordingly, Defendants' MIL No. 7 is **DENIED** without prejudice to renewal of objections at trial.

4.   Defendants' MIL No. 6 to Exclude Evidence or Argument That Defendants Had Direct Access to 10875DV and MIL No. 8 to Exclude Evidence or Argument Contradictory to or Unexpressed in Plaintiff's Release of Anthropologie

Finally, based on their reading of the Court's MSJ Order, Defendants seek exclusion of evidence that Defendants had direct access to Plaintiff's 10875DV design and exclusion of evidence that contradicts or supplies unexpressed meaning to what Defendants interpret as the plain language in Plaintiff's November 2014 release executed in the Green Mochi case.  Defs' MIL No. 6 at 1, Dkt. No. 100; Defs' MIL No. 8 at 6-9, Dkt. No. 102.   Both MILs rely on a misinterpretation of the Court's MSJ Order, however, and will thus be denied.  First, Defendants argue in their MIL No. 6 that the Court should exclude evidence or argument that Defendants had direct access to the design 10875DV because the Court denied summary judgment in Plaintiff's favor on that issue.[17]  As Plaintiff correctly notes, however, the Court did not rule as a matter of law that Plaintiff had failed to prove Defendants' direct access to the 10875DV design (in other words granting summary judgment in Defendants' favor on the issue).  Rather, the Court held that, based on the evidence presented in the summary judgment briefing, the Court could **not** rule as a matter of law that Defendants had direct access to the 10875DV design.  *See* MSJ Order at 18-20.  This ruling does not preclude Plaintiff from presenting evidence at trial to prove this element of its case before a jury.  Defendants' MIL No. 6 is thus **DENIED** without prejudice to objections on the above grounds concerning specific evidence at trial.

---

[17] Defendants argue in the alternative that this evidence should be excluded because it was not produced in discovery.  Defs' MIL No. 6 at 3-4.  Defendants fail to identify any specific evidence that Plaintiff failed to produce, however, making any Rule 37(c)(1) exclusion premature at this point.

Second, Defendants argue in their MIL No. 8 that the Court must exclude Plaintiff's parol evidence concerning the November 2014 Release because such evidence is "contradictory" to the "plain meaning" of the Release and supplies unexpressed meaning to its terms.  As already discussed in the Court's Order denying Defendants' Ex Parte Application, however, the Court has held that the Release is ambiguous in scope and that parol evidence is admissible to show the parties' intent on that point.[18]  Dkt. No. 139 at 4-5.  While Plaintiff's evidence may be contradictory to Defendants' interpretation of the release, it is not contradictory to the "plain language" of the Release because the meaning of the language in the Release is unclear.  In such cases, parol evidence is admissible to supply evidence of the parties' intent not otherwise evident from the language of the agreement. Accordingly, Defendants' MIL No. 8 is **DENIED** without prejudice to renewal of objections at trial.

## IV.   **CONCLUSION**

For the reasons discussed above, the Court **ORDERS** as follows:

1.   Defendants' first, second, fifth, eleventh, twelfth, sixteenth, eighteenth, and nineteenth affirmative defenses are **STRICKEN**.

---

[18] At the Pretrial Conference, the parties expressed confusion over whether the Court's MSJ Order indicated that this question would be presented to the jury or decided by the Court.  But as the Court explained at the hearing, the Court's MSJ Order makes clear that "when 'ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury.'"  MSJ Order at 13-14 (citing *City of Hope Nat. Med. Ctr. v. Genentech, Inc.,* 43 Cal.4th 375, 395 (2008)).  Here, the Court has found that determining the intent of the parties and thus resolving the ambiguous scope of the contract will require a credibility assessment and that this question therefore must be presented to the jury.  Counsel for Plaintiff argued at the Conference that no such assessment is necessary because Defendants did not present any competing evidence in the summary judgment phase.  The Court found in its MSJ Order, however, that Defendants' dispute of Plaintiff's evidence was sufficient to create a question of credibility, and Defendants have made abundantly clear that they intend to present competing evidence at trial.  Accordingly, the Court concludes that there is a sufficiently clear credibility question that requires jury consideration.

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE

2.      This proceeding shall be **BIFURCATED** into a first phase concerning liability and damages and a second phase concerning Defendants' equitable affirmative defenses.

3.      Plaintiffs' MIL No. 1 (Dkt. No. 91) is **GRANTED** as it concerns Mr. Sabier and Mr. Silbert and **DENIED** as it concerns Ms. Vincent.

4.      Plaintiff's MIL No. 2 (Dkt. No. 92) is **DENIED** without prejudice to renewal of objections at trial.

5.      Plaintiff's MIL No. 3 (Dkt. No. 93) is **GRANTED** in accordance with this Court's order concerning bifurcation.

6.      Plaintiff's MIL No. 4 (Dkt. No. 94) is **DENIED** without prejudice to renewal of objections at trial.

7.      Plaintiff's Request for Judicial Notice and Advisement of Jury (Dkt. No. 132) is **DENIED**.

8.      Plaintiff's second Request for Judicial Notice and Advisement of Jury (Dkt. No. 145) is **DENIED**.

9.      Defendants' MIL No. 1 (Dkt. No. 95) is **GRANTED**.

10.     Defendants' MIL No. 2 (Dkt. No. 96) is **GRANTED**.

11.     Defendants' MIL No. 3 (Dkt. No. 97) is **DENIED** without prejudice to renewal of objections at trial.

12.     Defendants' MIL No. 4 (Dkt. No. 98) is **DENIED** without prejudice to renewal of objections at trial.

13.     Defendants' MIL No. 5 (Dkt. No. 99) is **DENIED**.

14.     Defendants' MIL No. 6 (Dkt. No. 100) is **DENIED** without prejudice to renewal of objections at trial.

15.     Defendants' MIL No. 7 (Dkt. No. 101) is **DENIED** without prejudice to renewal of objections at trial.

//

//

16.    Defendants' MIL No. 8 (Dkt. No. 102) is **DENIED** without prejudice to renewal of objections at trial.

**IT IS SO ORDERED**.

DATED: March 21, 2016

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

ORDER RE AFFIRMATIVE DEFENSES, BIFURCATION, AND MOTIONS IN LIMINE